You might want to just give them a minute to get set up. I was going to say... Yeah. That's all right. Take your time. A lot of stuff. Yeah. I mean, what's going on here? Okay.  Thank you, your honor. May it please the court. My name is Byron Miller and I represent US Nursing Corporation and I would like to reserve three minutes for rebuttal. Very well. Your honors, in this case, there were four egregious errors, the very worst of which was the use of offensive collateral estoppel. All of these errors, individually and collectively, resulted in an unfair trial to US Nursing, a denial of due process as to the de novo issue of identity, and an unjust verdict that must be reversed and remanded for a new trial. What was the name of your nurse as opposed to? Connie Foote. Okay. And what's the name of the nurse that you say you should have been able to say was responsible for the harm? Well, there were only three nurses in the ER at the time. So your person was Foote. Foote, and there was Hurt, Nurse Sheila Hurt, and Nurse Roxanna Parsons. And the district court precluded you from saying that the other two were? Yes. But you didn't have any evidence, right? No, we had a lot of evidence. Really? I thought it was kind of common ground here that you had no evidence that the other two, one of the other two, was the person who met the guy who got hurt. No. I mean, and in fact, their brief incorrectly stated that somehow in the pretrial conference with Judge Caldwell, I said that we didn't have any evidence. In fact, the record says that I said we have overwhelming evidence. What's your overwhelming evidence that it wasn't your nurse, that it was one of the others? For example, just a couple of concrete pieces of evidence. Okay. For example, Ken Jaworski was the driver of the pickup truck. He brought Profitt to the emergency room that night. He testified that he walked into the emergency room by himself, went to the desk, saw a female, told the female that he's got somebody injured, and the female follows him out with a wheelchair, puts Profitt in a wheelchair, and brings him back to the emergency room. Ellen Wright, the CEO of the hospital. I don't understand how that is evidence that it was someone different than your nurse. I'm setting up the evidence. Oh, I'm sorry. That's all right. Ellen Wright testified that it was Roxanne Parsons' job to staff the desk, that it was her job to be there to staff the desk and assist patients and whatever, people coming in. The only person that was staffing the desk that night was Roxanne Parsons. We have all of the records, the records of the three patients that were in the hospital at the time. Nurse Foote was attending to a pediatric patient. Roxanne Parsons' name and initials are nowhere in any of the charts because her job was to staff the desk. So we not only have Roxanne Parsons clearly in the position where she had the encounter with Ken Jaworski, but Parsons and Hurt both said, we have no recollection whatsoever of that night. We don't remember Mr. Profitt, and she or Hurt testified that it could have been any one of us. Then Mr. Profitt, in his testimony, said, I was so out of it, I could barely remember it was even a female, but he testified that the female who brought him into the wheelchair was the nurse that stayed with him the entire time and started all the procedures. That could not have been Connie Foote. Connie Foote... He also said other things that clearly indicated, in his view, that it was your nurse. The only thing that he... You know, a certain thing about her accent or something. Right. Correct. But he said he was 75% sure. But that's the only evidence... It's not to win. That's true. That's true. But this is really a circumstantial evidence case, and there's a... You've answered my question. I understand your point, why you wanted to be able to do this. And some of that evidence was new evidence that was not discovered until after Judge Thapar ordered a de novo trial on the issues of identity and negligence, and we uncovered not only Ellen Wright's testimony and the fact that nurse Parsons' job was to staff the front desk, but also the medical records of the three other individuals. So there are five reasons why offensive collateral estoppel should not have been applied in this case, but what I want to do is I want to focus on two of them. The first is a requirement in Kentucky, and essentially a universal requirement, that the application of offensive collateral estoppel comport with notions of justice and fairness. Counsel, just so I can get the issues straight, the way the district court, I think, lays it out is that there's four requirements for collateral estoppel and two more that are added in the case of offensive collateral estoppel. Right, y'all? That's sort of... Yes. ...an agreement. I'm reading your arguments as focused solely on the last two. Is that correct? Well, I mean, I think the arguments focus on the issue of the inability to get a full and fair opportunity to litigate, which brings into the no standard... Which of the first four do you challenge? I'm sorry? Which of the first four do you challenge? Because it sounds to me from your brief like you're only challenging the last two. The two that are added for so-called offensive collateral estoppel. I'm just trying to understand the issues, because I think there's some issues you might raise, but if you're not raising them, I don't want to talk about them. Well, I thought that our brief set forth that we were challenging all of these issues. We are challenging... Well, we're... Okay. Okay, I'm sorry. I'll have to look. So all six of them you're arguing? Or... Yes, yes. I mean... Well, then I should be able to look in your brief and find language that deals with each one of them. Well, I mean, you had seen ample incentive to challenge in the state court the grant of summary, the exculpation, so to speak, of Hunt and Parsons. Is that fair? Well, yes and no. I mean, incentive, I mean, I could have stood up and made some objection. The problem is it would have been an exercise in futility, because the motion for summary judgment was by Norton Parsons, not by ARH. But the claim was against the plaintiff, and the plaintiff filed no objection, no response, didn't oppose it. One element here is that you had a full and fair opportunity to litigate the grant of summary judgment to Hunt and Parsons, correct? That's an element. Correct. And it would seem like you did have that full and fair opportunity. You could have. You could have appealed. I mean, and this, correct me if I'm wrong, but my understanding is procedurally, you could have appealed that grant of summary judgment, that exculpation of the two people that would leave only your nurse. Well, Kentucky law says otherwise. Kentucky law says we had no right to appeal. We had no standing. It would have been an objection, an exercise in futility. Jenkins is clear and Dwyer is clear. Okay, so you were a party in the Kentucky case, is that correct? That's correct. You were an intervener. No. You were just a straight-out party. Straight-out party. U.S. Nursing and Connie Foote were defendants in that case. Was there any ... Disregard the standing for a moment. Was there any procedural obstacle in that case under Kentucky law to you appealing that summary judgment determination in favor of the other two nurses? Absolutely. What was it? It was black letter law that you can't appeal a summary judgment granted in favor of a co-defendant. If the plaintiff doesn't resist or doesn't oppose another defendant, can't oppose that or prevent that from happening or being entered or file an appeal based on that grant of summary judgment, even if it's to try to somehow preserve an issue of apportionment. But does this actually matter whether or not you were allowed to appeal? Because didn't the Kentucky court rule in its motion in Lemonet that you did have a full and fair opportunity to contest? And so why isn't that either like a great indication of what Kentucky law would be or I mean, maybe you're collaterally estopped from arguing against the collateral estoppel. I don't know. One or the other? Well, the ruling that was granted issue preclusion by the lower court was the summary judgment in favor of Hurt and Parsons, not the motion in Lemonet. Right, but ... It was explicitly so limited. Right? I'm sorry? It was explicitly so limited. The federal district court said we're not looking at the collateral estoppel effect of the decision not to allow these people to refer to. We're only looking at the collateral estoppel effect of the dismissal. Is that correct? The summary judgment, yes. Yeah. Not the motion in Lemonet. Okay, but even if that's true, on the motion in Lemonet, the Kentucky judge thought that you had a full and fair opportunity to argue the question of the identity, so doesn't that seem to at least suggest that under ... that Kentucky law would suggest that you had that opportunity? Right? He's a Kentucky judge making ... He is. He or she. It was Judge Coleman in Pike Circuit Court, but he was flat out wrong. I mean, our expert witness who is the former chief justice of the Kentucky Supreme Court, Justice Lambert, said he was as wrong as wrong can be. The law cannot be such that we would have to go to trial, risk an adverse verdict, take it up on appeal simply to preserve some issue so that down the road we could avoid issue preclusion in an indemnity action. Besides, under Dwyer, if we took it up on appeal, what would happen to be the same thing that happened in Dwyer? You have no standing. You have no right to appeal. Dismissed. Meanwhile, we could be facing a huge verdict as a result. You didn't make the standing argument in the district court, though, right? Yes, we did. Yeah? Yes. I think they say this is all news, if I recall. I mean, your opponents say, maybe I'm misremembering the brief, but ... We not only raised it in a status conference, we had a ... not a status conference, but a pretrial, but the court then said, submit briefs on it, and restricted us to a one-page brief, and so we actually submitted a very lengthy ... we squeezed in a lot of stuff on a single microfiche, but we raised the standing right to appeal, the Jenkins case, the Dwyer versus Concrete, also the Blonder case, so it was all set forth. So the prejudice to U.S. nursing was palpable and real. How unfair and unjust was it to deny U.S. nursing the ability to contest the issue of identity? Once, what happened is, the court said, you cannot introduce any evidence as to Hurt or Parsons. You can't even stand up and argue to the jury that it was Hurt and Parsons. So what happened in the closing argument on phase one, ARH's counsel stood up and told the jury, and I'm reading directly from the testimony, there were three possible suspects, Foote, Hurt, and Parsons. Hurt and Parsons have been ruled out. There's no evidence that Hurt or Parsons were the ones who transported Mr. Proffitt, and Mr. Miller hasn't even argued that they were. I couldn't. I would be sanctioned by the judge if I introduced any evidence or argued and say, so they took the issue preclusion ruling, and they used it not only as a shield to prevent me from putting on the evidence, but they used it as a cudgel to hammer me in closing argument that I couldn't argue. Well, of course I could have argued, and I should have argued it. That's part of the denial of due process, and the only party that got a de novo trial in this case on the issue of identity was ARH. U.S. Nursing did not get a de novo trial at all. Okay, well, your time's up, so you'll have a rebuttal, and we'll hear what Mr. Hunter has to say. Thank you. May it please the court, Barry Hunter, and I'm representing Appalachian Regional Health Care, which I'll refer to as Appalachian. Your Honors, this was a seven-day jury trial conducted in two phases in Pikeville, Kentucky. The four rulings that counsel is challenging were all evidentiary or quasi-evidentiary rulings. As a result, in order to set aside that jury verdict, there needs to be an abuse of discretion, and they have to show that it made a difference in the outcome of the trial, and we submit they haven't done that and they can't do that. There would be an abuse of discretion if there was a legal error that supported the determination. Is that correct? If you're talking about collateral estoppel, even the question of whether or not offensive collateral estoppel applies, and even the question of whether this no-appeal, no-preclusion rule applies that they're arguing, those are also abuse of discretion, and I've cited cases in the brief, United States v. Sanda's Pharmacy, Sixth Circuit case, Roberson v. Torres. It would appear if the district judge just got collateral estoppel law wrong, we would have to give abuse of discretion. What I'm saying is that the question of whether or not you apply collateral estoppel in this context. My question is, if you got the law wrong, where she got the law wrong? When I first read all this, I thought, oh, of course, she got the law right. It looks puzzling to me, I must say. Go ahead. Okay. Well, the reason that she didn't get the law wrong, well, let me just run through it. On the collateral estoppel, there's like four reasons why this is not something that should be reversed. First, this law that they're citing, which is this no-appeal, no-preclusion, it was never Mr. Miller's wrong on that. Secondly, it had nothing to do with why they didn't oppose the summary judgment in the trial court. Third, it was satisfied here in any event because they had the ability to appeal from the in limine motion in state court. In the in limine motion in state court, they did challenge it, and the whole issue was what was the effect of the summary judgment on their proofs. So even if they're right about being able to appeal the summary judgment, they could have appealed the in limine. And the last point is that they haven't been able to point to any evidence. I can address what Mr. Miller said briefly. It's in the briefs, but there's no evidence that would have supported the argument that these two nurses transported to Mr. Profitt in any event. So I mean, I guess I am, if you could just remind me of your response to Mr. Miller's arguments, you know, his evidentiary arguments today with regard to who was manning the desk and, you know, I know there's this business about their nurse was supposed to be helping a child. So with Nurse Parsons, most important point, I think, is that at the pretrial, the day before the trial, when they first argued this whole issue about standing, the judge asked Mr. Miller, what evidence do you have that it was either Hurt or Parsons? Is this federal or state court we're talking about? Federal. Day before the trial. And Mr. Miller answered for Hurt, but there was no answer for Parsons. And in our brief, we cited that, A, there was no evidence, if you read the depositions, there's no evidence that Parsons was at the desk. Mr. Jaworski, who we talked about, testified that, I don't know if it was the nurse who was at the desk who came out or not. I mean, there's no evidence about Parsons. He talks about how there was evidence that Parsons wore white scrubs and there was testimony the nurse who transported Mr. Proffitt wore white scrubs. We cited in the brief, it's at pages 48 through 51, there is absolutely no evidence that Nurse wore white scrubs. But the point is, none of this was argued in front of the district court, even though Mr. Miller was asked. And then this argument that they're raising on reply, which is that it's really important here because all of this evidence was adduced after the state court trial, that was argued nowhere in the district court. They didn't even argue it in the initial brief. They argued it for the first time in the reply brief. So again, our position is this wasn't really evidence, but they've waived that. They can't raise an issue that they didn't raise in the district court and they've raised for the first time in reply. As far as... Mr. Hunter, I have to concede there's one argument that is troubling me. Yes. It's not that argument. Yeah. Right. The argument that troubles me is that if you have an ordinary tort suit where everybody agrees that only one person committed the tort, there's disagreement as to who that person is. All right? Maybe you sue this person and he's rich and the other person is absconded or you can't get a hold of them or you like them or it's your sister or whatever, you don't sue that person. Normally, there's no way for the person who's sued to get that other person into the case as a party. Is that true? Well, I don't... You know, they've cited that Compton case where the Kentucky courts do that fiction where they allow... If the plaintiff doesn't bring in a defendant, the co-defendant can implead the defendant and then the Kentucky courts dismiss it, but that's enough in order to get apportionment. I understand. I'm not talking about apportionment. I carefully described this as a non-apportionment kind of case. One person did it. Everybody knows only one person did it. The nature of the tort is that only one person could do it. It's not an inspection case where there's five inspectors and they all fail to inspect, right? In that kind of context, the way the defendant can deal with the possibility that someone else did it, which seems like under justice they ought to be able to do, is to prove that the other person did it or to give enough doubt to the court that the other person did it rather than you. You can't get them to be a party. What you do is you put in testimony to say that other person did it, but there's no way... If they are sued and then the plaintiff decides not to sue them, they can't force them to stay in, can they? Judge Rogers, that might be a reason why the Kentucky courts might say that... Where do they say anything inconsistent with that because it would seem to me... It's very strange to say something... Because this is a case in which both defendants were before the court. That wasn't an issue. Yeah, but then they were removed by an order that nobody opposed. Right, but what Dwyer says, and that's their case. You got to read Dwyer. What Dwyer says... Read Dwyer. Dwyer is focused all on the meaning of the Kentucky apportionment statute. But it also says even though you don't have a right to appeal, it's still a binding ruling on the remaining defendant if the initial defendant is dismissed. Dwyer says that? Yes, it does. And that's an important... That's for apportionment purposes. But it's also for purposes of the significance of the ruling on the initial dismissal. It says that the ruling on the initial dismissal is preclusive on the remaining defendant. For purposes of apportionment. Okay, for purposes of apportionment. But when it gets beyond... If you had a case like the case I'm describing, I just can't imagine it's like Chief Justice, they attribute to the former Chief Justice. It just seems astounding that you wouldn't be able to point the finger at somebody else who either was a party and no longer is a defendant or never was a defendant. Not for apportionment purposes. Apparently there's this unusual interpretation or interpretation of an unusual provision or an interpretation of the provision to make it pretty unusual, which distinguishes between people who have been sued and then have their suit terminated and people they never sue. Which seems a little artificial, but I could see it might work for apportionment purposes. But just for purposes of whether you can point the finger at somebody else and say, therefore, I was not that person. That person was there and I wasn't there. I'm just having trouble seeing how having that person be released as a party keeps you from pointing at him. Well, all I can say on that is that the only law, both the state court in Kentucky ruled that. Dwyer, which is a court of appeals ruling, I take your distinction between apportionment, but there's no case that says what you're saying. Yeah, but it seems obvious. What if we think it's right in those cases that are distinguished? Okay, well then. Do you lose on that? Well, I don't think I lose on it because, look, if he, that might be within the same case. I mean, if you're saying they can point the finger in the same case. I think that's wrong and there's no law that says that. And I can cite you, I think the weight of authority nationwide, let alone in Kentucky, is that it is preclusive and it does bind you. But this is a collateral estoppel issue. And I think that what the law says. If the other person gets out, you can't point the finger at them? If there has been a ruling on a summary judgment, you can't point the finger at them. That's what Dwyer says, again, an apportionment. And based on specific language in the apportionment statute. It's not really. What the language in the apportionment statute is, is merely that if there's been a finding on the merits. And that's all that you would have here. You have a court. The apportionment statute lists some cases, lists the people that you can apportion with respect to. And by virtue of the fact that a particular situation is not listed, they say therefore you can't apportion with respect to that person. Because of the particular language as interpreted in another Supreme Court case in Kentucky. Listing those portions of the apportionment statute. Listing those, not portions, but those characteristics of the various defendants in the apportionment statute. I can merely say that in collateral estoppel cases, the rulings have been, and the court applied them, that when there has been a finding on the merits, that that binds the remaining defendant. And there are cases that we've cited. Non-apportionment cases. Well, yes, there are non-apportionment cases in other states that we cited that I can cite you to. I don't think they matter because I think in Kentucky, it's clear that the court said that there was standing here and that there was preclusion. But the cases, the cases in other states where they are alternative and not. You mean the district court in this particular case? I'm sorry? You mean the trial court in this particular case or are you talking about Dwyer? No, I'm talking case, I'm talking other courts in other cases, in other states. Oh, in other states. What about in this state, Kentucky? There are no cases in Kentucky other than Dwyer. Now you're saying that it's different because it's apportionment, but it's the only case. It looks different because it relies so heavily on the apportionment statute, which is in some respects kind of a strange statute. So I'm trying to get over this point and to make my remaining point, even if that's the case. That's what I'm asking you. Assuming that's the case. Collateral estoppel is still an issue and whether or not this can be applied is still an issue of discretion. Because even in cases that have said that whether or not it's binding depends on whether or not you have a right to appeal, the courts have said that you have to look at the facts and circumstances of the case in order to determine whether that should be applied. Let me just play it out. Two issues that are looked at in this case that makes it inappropriate for collateral estoppel. One, like I said before, even if you can agree that the summary judgment couldn't have been appealed, but there was an in limine decision that the state court judge made in this case. The state court judge made a decision that that finding bound U.S. nursing in foot. That could have been appealed. They opposed it. They settled it the next day. Pardon me? They settled it the next day, right? Well, it could have been appealed and you know that there are cases. The judge in this case very clearly said that she wasn't relying on that. Well, no. She said that she wasn't. That wasn't the history. That's right. But she was looking, she could look at the fact that the appeal was available. The second thing is that the law, I mean the situation here is clear. They went six years after this summary judgment saying that the reason that they didn't oppose it was because they didn't feel like they had enough of an incentive because they believed these nurses shouldn't be liable because there was no causation. That's what they said consistently for six years. It wasn't until the day before trial in the district court, after they had made that incentive argument in the state court and then again throughout the district court in limine proceedings that they first said, well, we couldn't have opposed it because of standing. It was the day before. And even then, they didn't say, and as a result of no standing, there's this no appeal, no preclusion rule that's a bright line rule. They never argued that in front of the district court. This whole argument in the brief about Restatement 28-1 and how that ought to be a bright line rule precluding, I'm sorry, excluding any collateral estoppel, you can look in the briefs. That was never argued below. And if you look at what Judge Caldwell ruled, you can see that her, that she took the argument about appellate standing, which they only raised on the last day, months after this whole thing had been briefed, she took that as an argument of incentive. And that's all she ruled on. So this whole argument that they're making in the brief about Restatement 28-1 and how the restatement is the touchstone of the law in Kentucky, that was never raised below. And we've cited a bunch of cases in our brief. If I could just have one more minute to cite a couple more. 30 seconds. You can wind up for 30 seconds. This is on points in their brief. And this is about the restatement, which they raised in their reply. Judge Tappar down the hall can tell you this. It's his case, Columbia Gas v. The Raven, which is 214 Westlaw 2711943. And he explains how in Kentucky with issue preclusion, Kentucky courts often don't apply the restatement. He gives all these examples, consent judgments, default judgments. So this whole argument about how Kentucky would apply the restatement, that's not an argument. You've got to wind it down, just out of fairness. Thank you. So we haven't addressed the other points. I think they're satisfactorily labeled in the brief. I take your point, Judge Rogers, about the distinction between this and an apportionment case. But I just say that there's no law to support the proposition that you're suggesting might be the law in Kentucky and they're suggesting should be the law in Kentucky. And without that, the court did not abuse its discretion and it properly applied the collateral estoppel law in the state. That's going to blow up. Okay. Thank you. Thank you. Why don't we give Mr. Miller an extra minute on rebuttal, if he wants it. You don't have to do it. That would be great, but I may not need it. I only have a few points to respond. It's up to you. Believe me. I mean, you have your time. If you want an extra minute, you have an extra minute. Thank you, Your Honor. First of all, the standard review... He had three minutes to begin with. That's correct. So he might have four, if he wants. Go ahead, sir. Thank you. The standard review on appeal of a district court's determination of offensive collateral estoppel is de novo. It is clear. It's black letter law. It's recited in the... Well, I think you don't have to worry about that. We understand if there's a legal error baked into an abuse of discretion, look at the legal stuff. I'm not going to respond to his argument that you haven't raised all of this stuff, the stuff that we were arguing about. You never raised it. Well, I disagree with the statement that we did. Well, point out where are the best points we can look for to see that you raised it. Well, you can look in our briefing. You can look at the transcripts of the hearing. I mean, the May 25, 2018 hearing, he says we never argued it. It's in page two of a reply brief. We set forth specific statements and quotes about how we raised it. What's the it we're talking about right now? When and where we raised these issues and these arguments. What issues and arguments? That's what... What are we talking about on page two? What issue was raised? I'm just trying to keep... The standing? The standing and no right to appeal? All right. I thought... Right, but I think he was arguing about... About how Kentucky courts apply the restatement. That's what he was saying was not raised below. As to other prongs, well, I think the law is clear that we don't have to raise every single case law or argument once we object and we assert a proper grounds for the error of the ruling. I mean... You do, if there are discrete different reasons why you think something's wrong, you have to tell the district court. We're not going to just say, well, he objected to that evidence and now we can come up with anything. That is... You do have to give the district court a chance to get it right for the right reason. I believe we did. In fact, you can look at the transcript of the hearing of May 25th, 2018. You can look at the brief that we filed, the single space brief that contains multiple sites and maybe... That's the one he says is filed very late. But I'm looking at the one you filed in response to the motion in limine, which is presumably the first time you should be making these arguments about collateral estoppel. Is that right? In the federal court? In the district court. Federal district court, right? I must say it's hard for me to figure out what exactly you're arguing in that filing. I'm talking about your U.S. Nursing Corporation response in opposition to the motion in limine to preclude argument as to the liability of nurses Hurd or Parsons. That's where you would raise the issues, right? That's where you would have your response. Yes. And I think that what happened is when we... You say it doesn't make any difference who the female was, but then later on you say that's the key issue. I have to say it was a little puzzling at least. Well that would be puzzling because since 2008 when I've been litigating this case, the primary issue, the key issue for U.S. Nursing and County Foot was they've got the wrong female, the wrong identity. I thought it seemed like the first line of defense and maybe the principal one for most of the litigation in Kentucky was the nurse did not inflict any injury. Taking this guy from this accident, putting him in a pickup truck in a seat belt, sitting upright driving to the hospital is what hurt him not moving 20 feet into the hospital. That is true too. It was a two-pronged defense, but there are two key issues. The issue of causation though was not an issue in the indemnity trial. Judge Thapar said it's the issue of damages and not causation. I don't see any Judge Thapar here. I think it's Judge Caldwell. Judge Thapar was the initial judge and then when he came to the Sixth Circuit, then the case got transferred to Judge Caldwell. But he initially said that with respect to the issue of causation, that's not before this court in terms of the indemnity action. It's just the issue of identity and whoever that female was, see if they prove it was Connie Foote, whether she breached the standard of care. My position is that what ARH is doing is trying to flip the burden of proof. It's not U.S. Nursing's burden to prove it was Herta Parsons. It's their burden to prove it was Connie Foote. Our response as a defendant is to simply say, that's incorrect. Here's all this evidence, circumstantial as it may be. Some of it pretty powerful to indicate that it wasn't Connie Foote. But the court said, you can't go into any of it. You can't put any of that evidence in and you can't make the argument. And then they stand up and tell the judge or tell the jury that you didn't see any evidence. So yeah. Your time's up. We'll look at this and see whether we can read it as having raised the issue.  All right. Thank you both for your argument. Thank you, Your Honor. I appreciate it. The case will be submitted.